UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN XIE,

    *Plaintiff*,

v.

KELU CHAO, Acting Chief Executive Officer, U.S. Agency for Global Media

    *Defendant.*

No. 21-cv-1289 (DLF)

**MEMORANDUM OPINION**

John Xie brings claims against the United States Agency for Global Media under the Rehabilitation Act. Before the Court is Acting Chief Executive Officer Kelu Chao's Partial Motion to Dismiss, Dkt. 11. For the reasons that follow, the Court will grant the Motion in part and deny it in part.

**I.    BACKGROUND**

    **A.    Facts**

John Xie joined the "China Branch" of Voice of America ("VOA") in February of 1993 and was promoted to Supervisory International Broadcaster in May of 2016. Compl. ¶¶ 15–16, Dkt. 1. VOA is a federally-funded station supported by the defendant United States Agency for Global Media ("the Agency"). *Id.* ¶ 5.

Xie suffers from a rare disorder called Chiari 1 Malformation. *Id.* ¶¶ 21–22. This condition causes a host of symptoms, including polyneuropathy, depressive disorder, anxiety disorder, seizure disorder and a headache disorder. *Id.* ¶ 25. Stress can increase the severity of his symptoms, including the stress induced by the fast-paced reporting of "hard news." *Id.* ¶¶ 18,

24. Following a flare-up in symptoms, Xie reported his condition to Ernest Torriero, his superior and Chief of the China Branch. *Id.* ¶¶ 30–31.

On July 31, 2018, days after learning of Xie's illness, Torriero proposed a restructuring of the China Branch. *Id.* ¶ 32. Under the proposal, Wei Hu, another VOA employee, would replace Xie as sole supervisor of the morning A.M. News/Radio Team, stripping him of supervisory and editorial authority. *Id.* ¶¶ 32–33. Torriero informed Xie that he made these changes because of his health. *Id.* ¶ 32.

Xie appealed the proposal both to Torriero and to Torriero's direct supervisor, Jing Zhang. *Id.* ¶¶ 36, 40–41. Neither request was granted. *Id.* ¶¶ 38, 45. Xie then requested a transfer to the Versioning Team, another division within VOA, on September 6, 2018. *Id.* ¶ 51. The next day, Torriero declined this request. *Id.* ¶ 53. Xie sought an appeal from VOA's Human Resources Manager on September 24, 2018, but it appears that the appeal was never granted. *Id.* ¶¶ 54–57.

Torriero formally implemented the proposed reorganization of the China Branch on October 9, 2018. *Id.* ¶¶ 60–62. From then on, Xie reported directly to Hu. *Id.* ¶ 64. On October 17, 2018, he requested a transfer to the Versioning or English Teaching teams or, alternatively, the freedom to telework on days when his symptoms are present. *Id.* ¶¶ 68–69. These requests were not granted. *Id.* ¶¶ 70–71, 85–86. Unable to obtain a transfer, Xie began to use sick leave on days when he experienced symptoms. *Id.* ¶ 71.

Tensions between Xie and Toerriero intensified in the days and weeks that followed. Frustrated by the Agency's treatment of his situation, Xie visited Torriero's office on October 22, 2018. *Id.* ¶¶ 73–74. During this meeting, Torriero allegedly "became angry" and called Xie's use of sick leave "disruptive." *Id.* ¶ 76. He stepped toward Xie "in an aggressive and

threatening manner," causing Xie to move backwards in fear. *Id.* ¶ 77.  Torriero then "loudly and aggressively" ordered Xie to leave his office. *Id.* ¶ 78.  Xie immediately reported the incident to both Zhang and Jenessa Coleman, a VOA Human Resources professional, promising to take legal action. *Id.* ¶¶ 79–80.  Coleman advised Xie that he could continue to use sick leave for his condition. *Id.* ¶ 80.  Still, the next day, Torriero instructed Xie not to use sick leave, as doing so was "disruptive" to the operation of the China Branch. *Id.* ¶ 83.

On October 26, 2018, Xie met with Torriero, Coleman, and Leslie Corbin, a professional within the Agency's Office of Civil Rights, to discuss his requests for accommodation, including his requests to transfer to the Features Team, Versioning Team, or English Teaching Team. *Id.* ¶ 85.  While Agency officials denied those requests for accommodation, *id.* ¶¶ 85–86, they did explain that the removal of his supervisory duties was an "unofficial accommodation," *id.* ¶ 89.  Corbin noted that Xie had offered insufficient medical documentation to support his request for accommodation and gave him until December 3, 2018 to substantiate his request with stronger documentation. *Id.* ¶¶ 93, 95.  Xie obtained additional documentation from his neurologist on November 5, 2018. *Id.* ¶¶ 99–101.

Xie's symptoms persisted, and around November 25, 2018, his condition caused him to make an error on a news piece. *Id.* ¶¶ 104–05.  The next day, Xie's Managing Editor, Joseph Chen, accused him of not taking his job seriously and placed a counseling letter describing the incident in his personnel record. *Id.* ¶¶ 108–09.  A few days later, he used a sick day to visit the emergency room to address his worsening condition. *Id.* ¶ 111.  Having learned of his hospitalization, Torriero and Chen emailed him the following day, informing him that he had violated VOA's sick leave policy. *Id.* ¶ 112.

Throughout 2018 and the spring of 2019, Xie continued to ask for accommodations for his condition. These requests were never granted. *Id.* ¶¶ 113–15.

### B. Procedural History

On October 29, 2018, Xie initiated EEO Counseling with the VOA Broadcasting Board of Governors. *Id.* ¶ 97. He received notice of his right to file a formal EEO complaint on February 28, 2019, which he filed on March 11, 2019. *Id.* ¶ 9. On February 10, 2021, the EEOC found in favor of the Agency. *Id.* ¶ 13. Xie filed suit in this Court on May 10, 2021, alleging several claims under the Rehabilitation Act, including intentional discrimination, failure to accommodate, hostile work environment, retaliation, and interference. *See id.* ¶¶ 121–43.

## II.  LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). An "unadorned, the-defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   ANALYSIS

The Agency moves to dismiss the intentional discrimination claim in Count I, the hostile work environment claim in Count II, and the retaliation claim in Count III. Def.'s Mot. to Dismiss at 6. The Court will address each claim in turn.

### A.   Exhaustion of Administrative Remedies

The Rehabilitation Act requires a person alleging a violation to exhaust administrative remedies by filing an administrative charge before bringing a civil suit. 29 U.S.C. § 794a(a)(1); *see also Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017). This exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted). A defendant may raise exhaustion as an affirmative defense in a motion to dismiss "when the facts that give rise to the defense are clear from the face of the complaint." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).

The employee must first initiate contact with an EEO counselor within 45 days of the allegedly discriminatory act. 29 C.F.R. § 1614.105(a)(1). Here, Xie initiated EEO counseling on October 29, 2018. Compl. ¶ 97. But the Court agrees with the Agency that he failed to exhaust administrative remedies for some of his claims. Def.'s Mot. to Dismiss at 7–9. At least two alleged acts occurred before September 14, 2018: the July 31, 2018, proposed restructuring of the China Branch and the September 7, 2018, denial of Xie's September 6 request to transfer to the Versioning Team. Compl. ¶¶ 32, 53, 97. To the extent the July 31 reorganization proposal constitutes a discrete act of discrimination, it took place outside the required 45-day window and is thus no longer actionable.

While Xie did not exhaust the September 7 denial, he did, contrary to the Agency's claim, *see* Def.'s Reply at 6, Dkt. 17, exhaust a later, October 17, 2018 transfer denial. This request to transfer to the Versioning or English Teaching teams, Compl. ¶ 68, was denied on October 26, 2018, *id.* ¶¶ 85–86. Xie alleges that his October 17 request was a "reaffirm[ation]" of his earlier one, *id.* ¶ 68, but the proposals were not identical, as he added the English Teaching Team as an option. *Id.* And the September request had already been denied. *Id.* ¶ 53. Accordingly, the September 7 and October 26 denials are "discrete discriminatory acts" that "start[ed] a new clock for filing charges alleging [each] act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Owens-Hart v. Howard Univ.*, 220 F. Supp. 3d 81, 93 (D.D.C. 2016) ("A new request for the same accommodation will restart the statute of limitations clock" for failure-to-accommodate claims). Xie timely exhausted the latter, but not the former, denial.

Thus, the Court will grant the Agency's motion to dismiss Xie's discrimination and retaliation claims to the extent they include the July 31, 2018, restructuring proposal and the September 7, 2018, transfer request denial.

### B. Failure to State a Discrimination Claim

Xie argues that the Agency intentionally discriminated against him by restructuring the China Branch. Pl.'s Opp'n at 10, Dkt. 13; Compl. ¶¶ 60–62.[1] To state an intentional discrimination claim under the Rehabilitation Act, the plaintiff must allege that he suffered an adverse employment action because of his disability. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).[2] An "adverse employment action" involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (internal quotation marks omitted); *see also Welch v. Skorton*, 299 F. Supp. 3d 102, 111 (D.D.C. 2018) (same standard applies for Rehabilitation Act claims); *Chambers v. District of Columbia*, 35 F.4th 870, 872 (D.C. Cir. 2022) (holding that a transfer decision can constitute an adverse employment action without any showing of "objectively tangible harm").

---

[1] It appears that Xie's discrimination claim is based only on the China Branch restructuring. *See* Pl.'s Opp'n at 6 ("Mr. Xie's claims of disability discrimination in the terms and conditions of employment stem from a reorganization of the leadership in the China Branch[.]"). Thus, the Court does not address whether the October 26 denial of his transfer request qualifies as an adverse employment action for purposes of the discrimination claim.

[2] The plaintiff must also allege that he has a disability within the meaning of the Act and that he was "otherwise qualified for the position with or without reasonable accommodation." *Drasek v. Burwell*, 121 F. Supp. 3d 143, 160 (D.D.C. 2015) (internal quotation marks omitted). The Agency does not contest either factor, nor does it challenge that the reorganization occurred because of Xie's disability.

Xie sufficiently alleges that the China Branch reorganization was an adverse employment action. Because he was stripped of editorial decision-making authority and placed under the direct supervision of a new employee, he alleges that the restructuring caused his demotion. Compl. ¶¶ 63–64; 89–91. "[T]he abrogation of . . . supervisory duties and other responsibilities" constitutes an "adverse employment action." *Hutchinson v. Holder*, 815 F. Supp. 2d 303, 312 (D.D.C. 2011). Xie does not allege a change in grade, nor has he reported a drop in income, *see* Def.'s Mot. to Dismiss at 9–16, but "withdrawing an employee's supervisory duties" can alone "constitute[] an adverse employment action," *Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003).[3] And even though, as the Agency notes, the reorganization shifted "only *some* of Plaintiff's duties to the new supervisor," Def.'s Reply at 6, a plaintiff need not allege that *all* of his job responsibilities were changed by reorganization. "[A] material reduction of supervisory responsibilities, no less than a total deprivation of such responsibilities, can amount to an adverse employment action." *Ohal v. Bd. of Trs. of Univ. of Dist. of Columbia,* 100 Fed. App'x 833, 834 (D.C. Cir. 2004). Taking Xie's allegations that he lost editorial and supervisory authority as true,

---

[3] After briefing concluded in this case, the D.C. Circuit decided *Chambers*, 35 F.4th 870, which holds that a transfer decision can constitute an adverse employment action without any showing of "objectively tangible harm," *id.* at 872. The Agency urges the Court not to apply *Chambers* and instead look to "the text of the federal sector provisions of Title VII" to find that the reorganization is not an adverse action. Def.'s Supp'l Authority at 2, Dkt. 19. But to agree with Xie, the Court need not consider *Chambers*, which controls only lateral transfer cases, as opposed to those involving effective demotions, *see Harbour v. Univ. Club of Washington*, No. 21-cv-2047, 2022 WL 2304033, at *6 n.4 (D.D.C. June 27, 2022). By alleging that he lost editorial and supervisory duties, he was left with "significantly different" and "diminished" responsibilities. *See Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007). That is enough to show an adverse employment action even pre-*Chambers*. *See id.* Further, the Court would not come to a different conclusion under Title VII's federal sector provision. The China Branch reorganization qualifies as a "personnel action" because it left Xie with a "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii).

as the Court must at this stage, he has shown that the restructuring qualifies as an adverse action. Thus, the Court will deny the Agency's motion to dismiss Xie's intentional discrimination claim.

### C. Failure to State a Hostile Work Environment Claim

Xie also alleges that the Agency created a hostile work environment. A hostile work environment exists where a plaintiff's employer subjects him to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). In assessing whether a hostile work environment exists, courts "look[] to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*

Xie alleges that multiple VOA employees contributed to a hostile work environment. He points to the following acts or events to support his claim:

> denying common requests for telework; subjecting him to hyper-scrutiny in his use of disability necessitated leave; labeling him as problematic; displaying violent outbursts towards him and culminating in an incident where Mr. Torriero displayed aggressive and threatening behavior towards Mr. Xie in a manner that constitutes legal assault; ongoing targeting and defamatory accusations of journalistic malfeasance; disparate and negative placement of information in his personnel file and harassing him while in the emergency room in regards to the Agency's leave policy, and mock[ing] his health.

Pl.'s Opp'n at 15; Compl. ¶¶ 68–72; 76–78, 83, 86, 108–12. These allegations do not suffice to state a hostile work environment claim.

Denying requests for telework, scrutinizing the use of sick days, requesting medical information, and questioning work product are actions no more "severe" or "pervasive" than "the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management." *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009); *see*

9

*also Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 8 (D.D.C. 2019) ("[A] plaintiff's being denied an award, the opportunity to telecommute, certain training, and a transfer [come] nowhere near satisfying the . . . standard for a hostile work environment.") (internal quotation marks omitted); *Saulsberry v. Barr*, 468 F. Supp. 3d 340, 350 (D.D.C. 2020) ("[S]elective enforcement of [telework] policies does not necessarily indicate conduct giving rise to a hostile work environment claim.") (internal quotation marks omitted).

Torriero's alleged threats and aggressive behavior also did not create a hostile work environment. While Title VII, the ADA, and the Rehabilitation Act prohibit discrimination, they do not guarantee civility in the workplace. *See Baloch*, 550 F.3d at 1199. Indeed, "[b]osses may be harsh, unfair and rude" without creating a hostile work environment. *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 188 (D.D.C. 2012). Because of this high bar, "single incidents are rarely severe or pervasive enough to constitute a hostile work environment." *Ham v. Ayers*, No. 15-cv-1390, 2019 WL 1202453, at *5 (D.D.C. Mar. 14, 2019). Those rare cases "tend to involve acts of serious, physical violence or sexual assault." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 94 (D.D.C. 2016) (citing *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1242–44 (10th Cir. 2001) (a single incident of sexual assault created a hostile work environment); *Smith v. Sheahan*, 189 F.3d 529, 531 (7th Cir. 1999) (serious physical assault created a hostile work environment)).

Torriero's conduct does not rise to the same level. He neither made contact with Xie nor caused him any physical harm. Rather, he stepped toward Xie in an aggressive manner and loudly instructed him to leave the office. Compl. ¶¶ 76–78. This behavior is closer to an "ordinary tribulation[] of the workplace" than a serious physical assault. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation omitted). Such incidents have not generally been held to create a hostile work environment. *See Akosile v. Armed Forces Ret.*

*Home*, 938 F. Supp. 2d 76, 87 (D.D.C. 2013) ("Negative interactions with supervisors, even when a supervisor yells and uses profanity, generally do not meet the [severe or pervasive] standard."); *Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6–7 (D.D.C. 2012), *aff'd*, 748 F.3d 1273 (D.C. Cir. 2014) (holding that supervisors did not subject plaintiff to a hostile work environment when they "raised their voices during meetings" and "threw a notebook in her direction"); *Fields*, 207 F. Supp. 3d at 94 (holding that a supervisor did not create a hostile work environment when he "screamed" and "slammed the door so hard that it shook the walls of the office") (internal quotation marks omitted).

Accordingly, the Court will grant the Agency's motion to dismiss the hostile work environment claim.

### D. Failure to State a Retaliation Claim

Finally, Xie alleges that the Agency retaliated against him through discrete action and through a retaliatory hostile work environment.

#### 1. *Discrete Retaliation Claim*

The Rehabilitation Act makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or an account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b). An employee claiming a violation of this provision must establish that "(i) []he engaged in statutorily protected activity'; (ii) '[]he suffered a materially adverse action by h[is] employer'; and (iii) 'a causal link connects the two.'" *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014) (alterations in original) (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). A "materially adverse action" is similar to, but slightly broader than, an "adverse employment action" as that term is used in the discrimination context. Indeed, the antiretaliation provision is

11

"not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). A plaintiff establishes a "materially adverse action" if the employer's conduct "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). While a retaliation claim can be grounded in harms inflicted outside the employment sphere, "[p]urely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006).

The Agency does not contest that Xie engaged in protected activity and instead challenges the second prong. *See* Def.'s Mot. to Dismiss at 9–16. The Court agrees that Xie does not point to any actionable conduct. First, Xie alleges that the denial of his request for accommodation was *itself* a form of retaliation. Compl. ¶ 138. But plaintiffs cannot "double count" a single discrete act under the Rehabilitation Act. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013) ("[I]f the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled.").[4]

Nor does the November 2018 counseling letter constitute a materially adverse action. Routine discipline or criticisms do not typically constitute retaliation. To qualify as a "materially adverse action," letters of counseling must be "abusive in tone or language or a predicate for a more tangible form of adverse action." *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 102

---

[4] Xie appears to concede that *Floyd* bars the argument that the denial of the accommodation request counts as a retaliatory act. *See* Pl.'s Opp'n at 13 ("[*Floyd v. Lee*] does little to help Defendant in this matter in that many of [Xie's] allegations go to actions other than the denial of the reasonable accommodation request.").

(D.D.C. 2011).  Xie argues that the letter was "harmful in that [it] would be used to determine [his] ratings, opportunities, and further discipline."  Pl.'s Opp'n at 13.  But his complaint does not allege that the letter promised financial or other job-related consequences or was used to justify such a result.  *See* Compl. ¶¶ 108–09.  Nor does he claim that the letter was abusive.  *Id.*  He alleges only that the letter, placed in an "ePerformance" file, recounted his editing mistake.  *Id.*  This is not enough to make it an adverse act.

Accordingly, the Court grants the Agency's Motion to Dismiss the discrete retaliation claim.

2.  *Retaliatory Hostile Work Environment Claim*

Xie also alleges that the discriminatory conduct that occurred after he first requested an accommodation constituted a retaliatory hostile work environment.  Pl.'s Opp'n at 15 n.10.  He urges the Court to adopt different standards for weighing retaliatory and substantive hostile work environment claims.  *Id.* at 14 n.9.  While the latter is governed by the "severe" or "pervasive" standard, he argues that the former is measured by the discrete retaliation standard: whether the environment "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *White*, 548 U.S. at 64 (quoting *Rochon*, 438 F.3d at 1219).

The Court disagrees.  Courts in this circuit hold that a retaliatory hostile work environment claim is governed by the same "severe" or "pervasive" standard.  *See Coady v. Chao*, No. 16-cv-2010, 2019 WL 4706908, at *5 (D.D.C. Sept. 26, 2019), *aff'd*, No. 19-cv-5292, 2020 WL 3409651 (D.C. Cir. June 11, 2020); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 79 (D.D.C. 2013) ("Courts in our circuit typically apply the same legal standard as that used in the discriminatory harassment context to determine whether retaliatory harassment is actionable."); *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 80 n.11 (D.D.C. 2012).  Because the Court finds that

Xie has not stated a substantive hostile work environment claim, it will also dismiss his retaliatory hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Agency's Partial Motion to Dismiss. A separate order consistent with this decision accompanies this memorandum opinion.

                                                                                     _____
                                                                                     DABNEY L. FRIEDRICH
                                                                                     United States District Judge

August 22, 2022